**HAROLD FURNACE CO., Plaintiff, v. JUNGLAS, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 578588. Decided April 4, 1949.

J. E. Gerity, Cleveland, for plaintiff.
Winer & Winer, for defendant.

# 10

## MEMORANDUM OPINION

By BLYTHIN, J.

The parties hereto waived trial by jury and submitted the issue in this cause to the court.

For some time prior to a date about December 16, 1946 defendant Junglas had been employed by the plaintiff Furnace Company as a mechanic on an hourly rate pay-basis. About the last mentioned date this employment was terminated and Junglas became a salesman of furnaces and parts on a commission basis. Under date of January 1, 1947 the salesman-on-commission employment arrangement was set forth in a written instrument designated as a "Salesman Contract" signed by the employee, and also by the Sales Manager on behalf of the employer, the Sales Manager being also the President of the Company. The conditions of employment and scale of commissions to be paid are quite fully set forth in the contract and it is quite clear that the defendant operated under such contract until a date about February 8, 1947. His earned commissions during that period were $35.35. It is agreed that Junglas transferred back to hourly pay basis on February 8, 1947 and ceased his services as a salesman under the Salesman Contract. He remained in the company's employ until April 25, 1947 but the controversy involved in this cause is confirmed to the period of December 16, 1946 to February 8, 1947 and to operations under the salesman commission-basis arrangement.

At or about the time of entering into the Salesman Contract arrangement the parties had a conversation at which the Furnace Company agreed to give to Junglas a weekly "advance" or "draw" of $36.00. This was later increased to $40.00, plus one-half of the commissions earned within the week. Such advances were made to the extent of $313.69. Deducting therefrom the $35.35 amount of earned commissions we arrive at a net "advance" or "draw" over "earned commissions" of $278.34 as of February 8, 1947, for which amount, with interest, the court would render judgment in this cause if the plaintiff was found to have a right to recover any amount. Such judgment, this date, would be in the sum of $314.34.

In its petition the plaintiff alleges:

"* * * and in accordance with the verbal and written agreements between plaintiff and defendant that defendant drew the amount of Three Hundred and Thirteen Dollars and Sixty Nine Cents ($313.69) as a drawing account to be applied against his commissions, and that defendant agreed to refund to plaintiff any amount in which said drawing account exceeded commissions due to defendant."

This allegation is traversed by defendant and the claim of agreement to refund the excess of advances over earned commissions becomes the real issue to be decided.

The "Salesman Contract" is the only written agreement between the parties and it fails to mention either "advances" or "draws" and, naturally mentions no obligation on the part of Junglas to repay any excess advances over earned commissions. The "advance" or "draw" arrangement, whatever its terms, was in the nature of a supplement to the original contract and was entirely verbal. During the period of the employment in issue the defendant was paid by check and it is clear that the check stub, in each case, had thereon the word "advance" or the word "draw" and that both parties distinctly understood the amounts paid to be chargeable against commissions under any and all conditions.

There being no written agreement between the parties concerning repayment to plaintiff, it becomes incumbent upon plaintiff to establish a verbal agreement as a basis of recovery in this cause. An implied agreement is held to be sufficient in cases of this kind but the petition in this cause bases the claim of plaintiff on "written and verbal agreements".

The court has been unable to find any reported cases in Ohio dealing with the right to recover in such cases but authorities and courts in other jurisdictions have spoken on the subject.

Labatt's Master and Servant. 2nd Vol. 2nd Ed. No. 461. Pgs. 1358 and 1359.

"On the other hand, such contracts do not, in the absence of an express stipulation to that effect, impose upon the employee a personal obligation to return the sums advanced to or withdrawn by him in the event of his not earning enough in commissions to offset them. Accordingly if the amount of the advances or withdrawals exceeds the amount of the commissions earned by him, an action will not lie against him to recover the excess."

57 A. L. R. 31.

Richmond Dry Goods Co. v. Wilson 141 S. E. 876. (W. Va.. Supreme Court of Appeals)

Syll:

"A contract of a salesman, employed on a commission basis,. provided that certain advances be made by the employer, which should be charged against his earned commissions. The contract did not make the salesman personally responsible for the advances, either directly or by implication. The commissions earned did not equal the amount advanced. Held: the advances are not loans, and the difference between them. and the earned commissions cannot be recovered from the salesman."

In the Annotation following, Page 33, the subject is treated and authorities cited, and the general rule is stated as follows:

"The rule to be deduced from the authorities is that where the contract of employment provides for advances to the employee, which are to be charged to and deducted from the commissions agreed by the employer to be paid to the employee, as the same may accrue, the employer cannot, in the absence of either an express or implied agreement or promise to repay any excess of advances over the commissions earned,. recover from the employee such excess."

Nelson v. American Business Bureau. 214 Ill. App. 432.

Syll. 2.

"In the absence of an express provision, in a contract of employment covering sales to be made on a commission basis, obligating the employee to pay back advances made in anticipation of commissions to be earned, or of words showing that such employee assumes personal liability to repay the same, such advancements are not to be deemed loans and the employee does not become personally liable to repay the same, although he fails to earn the expected commissions."

Arbaugh v. Shockney. 34 Ind. App. 269.

Syll. 5.

"Where plaintiff contracted with defendant for certain work, and to enable defendant to give his entire time and energy to such work agreed to advance him not to exceed $15.00 per week, payable out of commissions to become due defendant, it being agreed that defendant should remain in plaintiff's employ at plaintiff's option, so long as defendant was "in debt" to him, such contract does not show any obligation upon defendant personally to repay such advancements, but the same must be collected from such commissions, nor does it show any implied promise arising from such terms."

Anagnosti v. Almy.   252 Mass. 492.

"* * * The contract above described provided that the salesman was 'to have a drawing account of $100.00 per week, which shall be charged against his portion of said net profits, if any.' The salesman had drawn $1500.00.  The decree of the Superior Court ordered him to repay this to the broker.  HELD: that the decree in this respect must be reversed, as his right to retain what he drew was not dependent upon net profits afterwards being shown."

Weinstein-Goodkind Inc. v. Donovan.   266 N. Y. Supp. 670. Syll. 1.

"Advances by employer in excess of commissions earned by employee are not recoverable by employer, in absence of agreement to that effect, express or implied."

The documentary evidence presented on trial of this cause leaves the parties with an employer-employee relationship on a commission basis and with clear evidence of "advances" or "draws" against commissions, which advances were in excess of such commissions, as already herein indicated.  Only three persons testified—the defendant, on his own behalf; and one Frank Panza, an employee and one Walter P. Seidl, Office Manager, on behalf of the plaintiff.  Defendant's testimony discloses no promise to repay.  He asserted that he understood the "advance" payments to be "guaranteed."  Panza's testimony dealt with details of work only.

Seidl did not hire Junglas nor is there evidence that he was present at the hiring.  He testified that all salesmen were hired under the same kind of contract as the one signed by Junglas and that they were paid at the same time and in the same manner.  He testified that his records disclosed, in part, that:

"For the week ending December 21, 1946 Junglas was employed in the capacity of a furnace inspector in the sales department on the basis of a draw or advance of $36 a week plus one-half of the commissions that he earned."

Asked if he explained to Junglas what was meant by advancement, Seidl testified:

"No. I told him the same as I told anyone else, that advance means just exactly what it says. It is an advance towards commissions earned, and our policy has been with him as well as with anyone else that the basis of compensation may be a certain amount per week as a draw or advance but on the final computation of the account it is based on the amount of money he has received in wages and salary against the amount of commissions he has earned. It is strictly a commission set-up whereby the commissions earned are computed against the money he has received and the balance would indicate whether or not the man had money coming or whether he was in the hole with the company."

The record is totally lacking in evidence of any promise or agreement by or with Junglas that he was to be obligated to repay any amount of advances over earned commissions. The record is devoid of any evidence of conduct from which such an obligation could be implied. The court must therefore hold that plaintiff cannot prevail in this cause. Entry will be made herein, as of this date, as follows:

"Jury having been waived, trial had to court. Finding and judgment for defendant. Petition of plaintiff is dismissed at its costs. No record. Plaintiff excepts."