**MARBURGER, Appellant,**

v.

**EASTWOOD CHRYSLER–PLYMOUTH, Appellee.**

[Cite as *Marburger v. Eastwood Chrysler–Plymouth* (1991), 71 Ohio App.3d 222.]

Court of Appeals of Ohio,
Trumbull County.

No. 90–T–4358.

Decided March 4, 1991.

*Michael D. Rossi,* for appellant.
*James E. Gray,* for appellee.

PRYATEL, Judge.

On March 8, 1987, appellant, Timothy S. Marburger, and appellee, Eastwood Chrysler–Plymouth, Inc., entered into an employment contract. The contract, prepared by appellee, covered the period from March 5, 1987 to December 31, 1987, but was to be immediately terminable by either party upon written notice. Appellee employed appellant as Vice–President and Dealer/General Manager. The contract provided that for the services rendered by appellant, appellee would " * * * pay [appellant] a monthly draw of $7,000.00 to be applied against 25 percent of the adjusted corporate net profit to be based on the completed 13th financial statement for the year of 1987 for Eastwood as determined * * *."

Thereafter, appellant worked as Vice–President and General Manager and was paid his monthly draws through June 15, 1987. Although appellant worked through July 15, 1987, he did not receive his draw. Furthermore, appellee did not give appellant any notice of termination until July 17, 1987.

Appellant did not return to work one or two days prior to his formal termination because appellee had failed to pay appellant his draw. Appellant was formally terminated by appellee in a letter dated July 17, 1987. Appellee never paid the draw for the period between June 15 and July 15, 1987. When the so-called "13th financial statement" for 1987 was completed, appellant's cumulated draws were in excess of the "25% of the adjusted corporate net profit."

As a result, appellant filed a complaint, along with several other employees, for breach of contracts, fraud and damages. Throughout the next few months, the other plaintiffs settled out of court. On April 29, 1988, appellee filed a counterclaim against appellant. The dispute was assigned to compulsory arbitration in January 1989 as provided by Loc.R. 16. The arbitrator filed his report and award, finding in favor of appellee, but his report was silent as to appellee's counterclaim. Appellant appealed the report and award. All cases appealed from an arbitration award are tried *de novo* by the assigned judge. Loc.R. 16.20(B).

In the summer of 1989, the parties filed motions for summary judgment. On October 24, 1989, the trial court denied appellant's motion for summary judgment, granted appellee's motion for summary judgment, as well as appellant's motion for summary judgment on the counterclaim. It is from this judgment, denying him summary judgment, that appellant appeals, raising the following assignment of error:

"The trial court erred to the prejudice of plaintiff-appellant in denying him summary judgment and granting defendant-appellee summary judgment on the complaint."

The specific issue in this case is whether appellant (in absence of notice of termination) is entitled to recover his draw for a period in which he was employed when the employment contract states that the monthly draw was to be applied against a percentage of appellee's adjusted gross profit and at the end of the fiscal year.

Before reaching the main issue, reviewing the contract is necessary to determine if it is ambiguous. As appellee correctly asserts, where the language to a contract is unambiguous concerning the parties' intentions, courts must realize, not alter, their intent. *Allstate Ins. Co. v. Employer's Group Ins. Co.* (1969), 18 Ohio Misc. 62, 47 O.O.2d 98, 246 N.E.2d 924. On the other hand, if this court determines that the relevant contractual language is ambiguous, the age-old maxim *ambiguitas contra stipulatorem est* applies. *Central Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 16 O.O.3d 441, 442, 406 N.E.2d 515, 517. *Ambiguitas contra stipulatorem est* provides that

when an ambiguity arises in a contract, the ambiguity is resolved against the stipulator.

■ In this case, appellee was the drafter of the contract. In pertinent part, the contract states:

"Eastwood Chrysler Plymouth–BMW, Inc. does extend to you the following employment agreement to be effective March 5, 1987 through the period of December 31, 1987. The term of your employment, however, will be indefinite and may be terminated by either party immediately upon written notice.

"Eastwood will employ you as Vice–President and Dealer/General Manager of the Dealership located at 3843 Youngstown Rd., SE, Warren, Ohio 44484, with such powers and duties as may be fixed by the Board of Directors of Eastwood Chrysler Plymouth–BMW, Inc.

"For the services rendered by you as hereinbefore referred, Eastwood will *pay you a monthly draw of $7,000.00* to be applied against 25 percent of the adjusted corporate net profit to be based on the completed 13th financial statement for the year of 1987 for Eastwood as determined by the company accounting firm.

"It is understood that all terms are BIT (before income taxes) and that adjusted corporate net profit is defined in computation of bonus base as follows. The net income as shown on the completed 13th financial statement for 1987 will be decreased by any management fees paid by KLMV Agency, Inc. to Eastwood (KLMV Agency, Inc. is a totally separate corporation) and will be increased by the $7,000.00 monthly draws advanced to you." (Emphasis added.)

In as far as the issues before us are concerned, we agree that the contract is not ambiguous. Appellee argues that the contract calls for the $7,000 to be an advance applied against twenty-five percent of the corporate profit, and that since the adjusted corporate net profit shows appellant has received more than that in compensation, he is not entitled to his draw covering the period June 15, 1987 through July 15, 1987. However, this is *not* what the contract provides. The contract states, "Eastwood will pay you a monthly draw of $7,000.00." It does not make any provision for a draw deduction if profits are lower than expected. Nor may a party terminate the contract without written notice.

■ Ohio law is clear that unless there is an expressed or implied promise to repay, an employee is entitled to retain the full amount of the drawing account, even if it is in excess of the profit actually earned. *Bade v. Duffy* (1978), 57 Ohio App.2d 170, 11 O.O.3d 166, 385 N.E.2d 1346; *Miller v. Levy*

(1978), 60 Ohio App.2d 78, 14 O.O.3d 61, 395 N.E.2d 509; *Harold Furnace Co. v. Junglas* (1949), 55 Ohio Law Abs. 9, 88 N.E.2d 586.

The general rule is stated in *Carter Constr. Co. v. Sims* (1973), 253 Ark. 868, 876–877, 491 S.W.2d 50, 55:

" 'Under a contract providing for an employee's share of the net profits and a drawing account of a fixed sum payable periodically, the drawing account is payable absolutely.' " *Id.*, quoting 56 Corpus Juris Secundum (1959) 525–526, Master and Servant, Section 95.

In explaining its rationale, the *Carter* court explained that the undertaking is a joint enterprise in which the main objective is to further the employer's business; and, as such, it is not assumed that the employee is assuming all the risk. *Id.*, 253 Ark. at 876, 491 N.W.2d at 55. The *Carter* court held that the employer was liable for the drawing account to the employee, despite that there were no net profits resulting from employee's services, where the employee was to receive a percentage of the net profit as compensation for services with his drawing account to be charged against it. *Id.*, 253 Ark. at 875, 491 S.W.2d at 54.

Likewise, the Louisiana Court of Appeals was faced with a situation similar to the facts in the present case in *Landry v. Huber* (La.1962), 138 So.2d 449. Specifically, the employee was to receive a percentage of the net profit of the firm as compensation for his services, and his monthly drawing account was to be charged against it. Until his termination, the employee had been paid the monthly drawing amount stipulated in the contract through November 15, 1959, but the employer refused to pay the employee any compensation for the final period of his employment, November 15 to December 23. As in the present case, the employer contended that the drawing account was only an advance against the employee's share of the net profit; and that, since there had been no net profits, it was not liable to the employee for any drawing account for the period in question. The Louisiana court held that despite the lack of net profits, the employer was liable for the drawing account to the employee.

■ The facts in the present case support the proposition that appellee is liable to appellant for his draw June 15 to July 15, 1987. Without language to the contrary, an employer is liable for the fixed sum periodically payable. There is no language expressed or implied by the contract which states that appellee is not required to pay the draw. Moreover, appellee failed to give appellant written notice of termination, and appellant continued to work at appellee's place of business through July 15, 1987 without compensation.

As such, appellee's motion for summary judgment should not have been granted. The contract, which is the crux of this dispute, was properly before the trial court. There is no question of fact in this case. Based on the applicable law, appellant's motion for summary judgment, not appellee's, should have been granted by the trial court.

Thus, appellant's assignment of error, questioning the trial court's decision to grant appellee's motion for summary judgment, has merit. Judgment reversed and final judgment entered for appellant.

*Judgment reversed.*

Cox, J., concurs.

Ford, P.J., concurs with concurring opinion.

August Pryatel, J., retired, of the Eighth Appellate District, sitting by assignment.

Edward A. Cox, J., of the Seventh Appellate District, sitting by assignment.

Ford, Presiding Judge, concurring.

While I concur with the majority in its rationale that appellee is obligated to pay appellant the monthly draw for the period from June 15, 1987 to July 15, 1987, which is predicated on the reasoning expressed in the Ohio cases and sister-state authority cited in the opinion, I do not share its view that the pivotal contract language involved in this matter is not ambiguous.

Again, the concept of law expressed in the cases referred to by the majority simply states that unless the evidence demonstrates an express or implied promise to repay a draw against profits, the employee is entitled to the draw even if it is in excess of the profit margin expressed in the agreement. This rule as applied to the facts in this dispute has the effect of singularly deciding this case.

However, it also appears to this writer that there is an equally cogent reason for reaching this result which could, indeed, support this result either independently or in tandem. For example, does the use of the verb "applied" in relation to the draw mean it is to be charged against twenty-five percent of the adjusted corporate net profit, or is it to have a different accounting application? How is the net income to be decreased by management fees to be *paid by* (not to) KLMV Agency, Inc. to Eastwood? Normally such fees would be credits that would enhance an income or profit posture. How do monthly draws increase the net income to be reflected in the 13th financial statement when common accounting principles declare that such draws would decrease net income?

The foregoing interrogatories do not in this writer's view provide an exemplar of non-ambiguity; on the contrary, this makes for a Serbonian bog. Consequently, I conclude that the maxim *ambiguitas contra stipulatorem est* has definite application against the appellee's drafting of the contract in question to support the conclusion reached by the majority here.